IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>     vs.<br><br>KYLE G. BURRIS,<br><br>             Defendant. | CR 08–25–H–CCL<br>CV 13-36-H-CCL<br><br><br>ORDER |

Before the Court are Defendant Kyle Burris's two Motions to Vacate, Set Aside, or Correct Conviction and Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 45, 49). The first Motion sets forth four grounds. The second Motion sets forth two additional grounds and is supported by a brief. Defendant had filed a prior section 2255 motion, on January 30, 2012 (Doc. 39), but he withdrew that motion by his Notice of Withdrawal (Doc. 43) on April 20, 2012, before the Court acted upon it.

Therefore, the Court treats Doc. 45 as Defendant's first section 2255 motion, as supplemented by Doc. 49, his second motion. The Court refers to the two motions collectively as "the instant motion." However, and as explained below, the instant section 2255 motion is filed over three years after the expiration of the one-year statute of limitations for filing such a motion. *See* 28 U.S.C. § 2255(f). The Court notes also that even Defendant's first section 2255 motion, which was filed in 2012 and then withdrawn, was filed over two years after the expiration of the limitations period.

Background

Defendant Kyle Burris was indicted by a grand jury on two counts of "Attempted Sexual Exploitation of Children," (Counts I and II), in violation of 18 U.S.C. § 2251(a), six counts of "Distribution of Child Pornography," (Counts III-VIII), in violation of 18 U.S.C. § 2252A(a)(2), and one count of "Attempted Distribution of Child Pornography to a Minor," (Count IX), in violation of 18 U.S.C. § 2252A(a)(6).

Defendant Burris pleaded guilty to two counts of "Attempted Sexual

Exploitation of Children," three counts of "Distribution of Child Pornography," and one count of "Attempted Distribution of Child Pornography to a Minor" (Counts I-IV, VI, and IX). Burris did not enter into a written plea agreement, but at the time of his plea hearing the parties informed the Court that they had an oral agreement that called for Burris to plead to Counts I-IV, VI, and IX, and the government to dismiss Counts V, VII, and VIII.

During the plea hearing, the government stated for the record the factual basis underlying each count of conviction. In summary, Defendant Burris, a resident of Tonawanda, a small town in upstate New York, thought he was chatting on the Internet with a single mother of two preteen daughters residing in Montana. The "mother" was an FBI agent. Burris instructed the mother how to prepare her daughters for sexual activity, and on five separate dates he sent the mother photos of children engaged in sexually explicit conduct. He asked the mother to show her daughters the sexually explicit photos of children, to molest and photograph the daughters, and to send him the molestation photos. He talked to the mother (actually, a confidential witness) on the telephone. He sought her

help in obtaining a job in Montana.[1]  He discussed traveling to Montana to have

sexual intercourse with the two preteen girls.  (See Doc. 21, Offer of Proof.)

After his computer at his residence was searched, Defendant admitted the

aforementioned activities and also admitted that he had molested the child of a

neighbor.  At his plea hearing, Defendant Burris listened to the government's offer

of proof, including the government's allegation that Defendant had committed

prior hands-on sex offenses, and he admitted that the government's summary was

true.

At the time of sentencing on September 15, 2009, Defendant's Offense

Level was 36, his Criminal History Category was I, and his Guideline Range for

imprisonment was 188 to 235 months.  Counts I and II carried mandatory

minimum and maximum penalties of 15 to 30 years imprisonment.  Defense

counsel requested that the Court impose the 15-year (180 months) mandatory

---

[1]     Defendant Burris has obtained an Associate of Arts degree in data
processing and one additional year of college.  He has also received training in
public speaking as a member of Toastmaster's International.  (PSR ¶¶ 81-83.)

minimum.  The government requested a mid-guideline sentence.  The Court

sentenced Defendant at the bottom of the guideline range: 188 months on each

count, to be served concurrently, followed by a lifetime term of supervised release.

During the sentencing hearing, and in response to the government's expression of

concern about the possibility of a prior hands-on sexual offense, the Court

specifically stated that it would not sentence the Defendant as being a prior hands-

on sex offender because there was no corroboration of Defendant's admission.

Defendant did not object to his PSR or to any of the Court's findings or

sentencing calculations at his sentencing hearing.  Counts V, VII, and VIII were

dismissed on the government's motion, which was required by the parties' oral

plea agreement.  At the conclusion of the sentencing hearing, the Court advised

Defendant of his statutory right to appeal from the Court's Judgment.

Defendant did not file a direct appeal.[2]  He also did not file any collateral

---

[2]  Because there was no direct appeal in this case, no transcripts were prepared.  The Court therefore relies on its own notes, which describe in detail both the plea and sentencing hearings.  *See Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989) (permitting district court on collateral review to rely on record and judge's own notes and recollections of plea hearing and sentencing, as well as common sense).

challenge within the one-year limitations period.

AEDPA's One-year Statute of Limitations.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed a one-year statute of limitations that begins to run on "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). In this case, the Judgment of Conviction was filed on September 17, 2009, and no appeal was taken. Defendant had fourteen days within which to file a notice of appeal. *See* Fed. R.App. P. 4(b)(1)(A)(i). Defendant does not address the untimely nature of the instant section 2255 motion, except to claim that "[p]sychological impairments to defendant prevented him to file this motion within one year." (Doc. 45 at 12.) Defendant may not proceed unless he shows that he is entitled to equitable tolling. *See United States v. Battles*, 362 F.3d 1195, 1197 (9th Cir. 2004). In order to do that, a defendant must show (1) reasonably diligent pursuit of his rights, and (2) an extraordinary circumstance that prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010); *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009).

An "extraordinary circumstance" is one outside of the defendant's control.

*Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). Defendant has not presented, and the Court can see, no circumstance that prevented Defendant from filing either a direct appeal or a timely section 2255 motion. Defendant knew all of the facts alleged by his section 2255 motion at the time of his sentencing. There is no evidence to support Defendant's bald assertion that a psychological impairment prevented him from filing his motion in a timely manner. For these reasons, the Court finds that Defendant's section 2255 motion is untimely filed and not entitled to equitable tolling. Even if the motion were timely filed, however, it would still fail on the merits, as set forth below.

Section 2255 Standard

A prisoner is entitled to relief under 28 U.S.C. § 2255 "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. . . ." 28 U.S.C. § 2255. However, it is the prisoner's burden to establish his claims, and the prisoner must "clear a significantly higher hurdle than would exist on direct appeal." *United*

*States v. Frady*, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

This motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. When this standard is met, a hearing is not necessary. *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985). Moreover, section 2255 relief provides an extraordinary remedy, *see United States v. Addonizio*, 442 U.S. 178, 184, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), and it is the petitioner's duty to prove entitlement to it by a preponderance of the evidence, *see Farrow v. United States*, 580 F.2d 1339, 1355 (9th Cir. 1978).

Discussion

Defendant presents several claims for ineffective assistance of counsel. The Court applies the familiar standard supplied by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (creating two-part test for ineffective assistance of counsel claims). First,

Defendant Burris must show that his attorney's performance was deficient. This requires that he show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." This is a heavy burden. *Strickland*, 466 U.S. at 689. Second, Burris must show that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.* "A reasonable probability [that the results would be different] is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Counsel's performance is viewed from the perspective of defense counsel at the time of the alleged error and in the context of all the circumstances. *Id.* at 690. The Court must indulge defense counsel "with a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

The Court examines each ground for vacating the conviction or resentencing, as follows:

1.      "Lack of jurisdiction/venue for the Montana District Court since the alleged crime was committed in New York."  (Doc. 45 at 4.)

1.a.    "Ineffective assistance of counsel (6th amendment violation) for his attorney not raising ground one at Court."  (Doc. 45 at 5.)

Defendant argues "[t]he crime was committed in New York, not in Montana.  Defendant was illegally transferred to Montana, where he was tried.  There were no significant contacts with Montana."  (Doc. 45 at 4.)  This argument is without merit.  Federal statute provides that

> any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.  Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

18 U.S.C. § 3237(a).  It is not necessary that Defendant Burris ever enter the District of Montana for him to be tried and convicted in this jurisdiction.

Defendant used a telecommunications device in interstate commerce to

communicate with an individual in Montana for the purpose of attempting to sexually exploit a child. Defendant sent child pornography by means of the Internet to an individual in Montana on multiple occasions. The District of Montana was a proper jurisdiction and venue for indictment and prosecution of this case.

Defense counsel is not required to raise a claim that lacks merit. Defendant's claim of ineffective assistance of counsel for his supposed failure to object on jurisdiction/venue grounds is without merit because Defendant cannot show deficient performance or a reasonable probability that the results would be different had defense counsel objected to jurisdiction or venue.

2. "Ineffective counsel for not asking for a psychological evaluation of defendant. Defendant showed significant impairment in understanding the process. It is ineffective counsel for not asking for an evaluation and not asking for a downward departure from the guidelines due to psychological impairment." (Doc. 45 at 7.)

Defendant's Presentence Report ("PSR") shows that Defendant has no history of mental illness or other mental impairment. Indeed, the PSR states that "[t]he defendant appeared to be emotionally and psychologically stable at the time

of the interview." (PSR at 16, ¶ 17.)  At his change of plea hearing, Defendant

disclosed that he was taking Prozac and Buspar for depression and anxiety, but

Defendant stated that these medications did not affect his judgment.  Defendant

stated that he understood where he was and what he was doing.  Defense counsel

stated that he was satisfied that Defendant was competent.  The Court spent 40

minutes with the Defendant during the plea hearing and asked him numerous

questions, which were all answered appropriately.  (Doc. 23.)

At the plea hearing, the Court found Defendant to be competent and capable

of entering a plea, that he understood the nature of the charges and the penalties in

connection therewith, and that Defendant's tendered pleas of guilty were free and

voluntary and supported by a factual basis.  As to defense counsel's supposed

failure to request a downward departure on the basis of psychological impairment,

there was no mention at the sentencing hearing of any psychological impairment.

At his sentencing hearing, when given the opportunity to explain himself,

Defendant informed the Court that the reason for his offense conduct was that it

gave him an emotional high, he got caught up in it, and one thing led to another.

There is not even a hint in the record that a psychological impairment could have caused or contributed to the offense conduct.

Defendant's bald assertions of psychological impairment are unsupported by the record. By failing to demonstrate deficient performance and a reasonable probability that the outcome would have been different had defense counsel requested a psychological evaluation or downward departure, Defendant has failed to meet the *Strickland* requirements for showing ineffective assistance of counsel.

4.    "Constitutional violation to the 8th amendment (cruel and unusual punishment) for the amount of sentencing defendant received. Psychological impairment should have prompted a downward departure." (Doc. 45 at 8.)

Defendant was convicted of two counts of Attempted Sexual Exploitation of Children, both of which carried a 15-year mandatory minimum penalty, as well as three counts of distribution of child pornography and one count of attempted distribution of child pornography to a minor. Defendant's Guideline Range at sentencing was 188-235 months, and he was sentenced to 188 months. Defendant asserts that this sentence is cruel and unusual within the meaning of the Eighth

Amendment. However, in *United States v. Meiners*, 485 F.3d 1211, 1213 (9th Cir. 2007), the Ninth Circuit held that a 15-year mandatory minimum sentence imposed on a defendant who pled guilty to advertising and possession of child pornography did not violate the Eighth Amendment. Longer sentences have been upheld for crimes less severe than Defendant's offenses. In *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam), for example, the Supreme Court upheld a sentence of 40 years on a marijuana possession and distribution charge. The Supreme Court has also upheld a sentence of fifty years to life for stealing $150 in videotapes under California's three-strikes law. *See Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Certainly, a lifetime of supervised release in child pornography cases has been held not to be disproportionate to those offenses. *See United States v. Moriarty*, 429 F.3d 1012, 1025 (11th Cir. 2005).

Comparing the gravity of Defendant's offense to the severity of his 188-month sentence leads the Court to believe that the sentence is proportional to the crime. Defendant contacted a single mother (actually an FBI agent) in Montana

14

via the Internet and on multiple occasions instructed this mother how to molest her

two daughters, aged 8 and 12. On multiple occasions, Defendant gave explicit

instructions to the mother, which he apparently believed were being carried out by

her. Defendant sent child pornography images to the mother and asked that they

be shown to the daughters to show them what to do. From his residence in New

York, Defendant chatted online with the mother about traveling to Montana and

having sexual intercourse with her children. Defendant sent his resume to the

mother and asked that his resume be spread around Montana. Defendant spoke to

a woman playing the part of the "mother" on the telephone several times, and on

two occasions he gave verbal instructions to the mother to molest the daughters

contemporaneously as he was speaking on the telephone. After his arrest,

Defendant admitted an extensive involvement with child pornography, and he

admitted that he preferred females around the age of 12. (PSR ¶ 29.) "Burris

admitted he planned to travel to Montana to have sexual intercourse with the two

girls, ages 8 and 12." (PSR ¶ 35.) Defendant also admitted having actual sexual

contact with a girl in his neighborhood (claiming that the girl told him she was "18

or 19 years old") and having fantasies about three other children in the neighborhood whom he and his wife babysat.  (PSR   ¶ 36.)

Although Defendant Burris now characterizes his offense conduct as being pure fantasy driven by a psychological impairment, the evidence in this case indicates that Defendant had moved far past fantasy and stepped into reality when he took substantial criminal steps toward the sexual exploitation of children.  This Court concludes that Defendant's sentence does not violate the Eighth Amendment because a comparison of the gravity of the offense to the severity of the sentence does not give rise to an inference of gross disproportionality.  *See Graham v. Florida*, 560 U.S. 48, 59-60 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (holding that Eighth Amendment contains "narrow proportionality principle" that "does not require strict proportionality between crime and sentence" but forbids "gross disproportionality").  Defendant's Eighth Amendment claims is without merit.

5.      "Attorney failed to look for a plea agreement and coerced and forced defendant to make a straight plea of guilty."  (Doc. 49 at 4.)

First, it should be noted that it is not correct to say that Defendant Burris did not enter into a plea agreement with the government, because he did. His plea agreement was an oral agreement between him and the government that called on him to plead guilty to six counts of the Indictment and called on the government to dismiss three counts. That plea agreement was negotiated by defense counsel and the prosecutor, was stated on the record in open court during the plea hearing, and was executed by both parties. Defendant signed a "Notice of Intent to Plead Guilty Without a Plea Agreement" and acknowledged the circumstances of his plea and the fact that the government would dismiss three counts if the Defendant pled guilty to the other six. (Doc. 20.)

Second, defense counsel did attempt to negotiate a more extensive plea agreement with the prosecutor, but in the end the prosecutor declined to offer a written plea agreement:

> [B]ecause the parties were unable to resolve the disagreement concerning the factual basis for Counts V, VII and VIII the government was only willing to dismiss those counts without a plea agreement, which the defense actually saw as a benefit since plea agreement in cases such as Mr. Burris's usually involve waiver of

appeal of the sentence *and other limitations* that would be absent if there was no plea agreement[.]

(Doc. 59, Defense Counsel's Declaration in Response to Court Order, ¶ 4 (emphasis added).)

Third, Defendant's Presentence Report indicates that Defendant Burris refused to undergo a polygraph examination regarding his prior contacts with neighborhood children. (PSR ¶ 36.) It has been this Court's experience that this prosecutor routinely required defendants in cases such as this to submit to polygraph examinations, and the Defendant's failure to agree to this condition would likely have resulted in the prosecutor declining to offer a plea agreement.

The Court concludes that defense counsel did make reasonably diligent efforts to obtain a plea agreement for this Defendant, but a polygraph examination was a non-negotiable item for both sides. Defense counsel was able to obtain the dismissal of three counts, however, and that was the best he could do under the circumstances. Defendant's argument that he received ineffective assistance of counsel at the plea negotiation stage is without merit because Defendant fails to

show that defense counsel's performance was deficient.  Ground five is without merit.

6.    "Ineffective counsel in not [raising] Congress lack of power to criminalize child pornography possession."  (Doc. 49 at 5.)

Defendant claims that his possession of child pornography was an intrastate event that did not implicate interstate commerce or in any way invite regulation under the Commerce Clause of the U.S. Constitution.  Defendant therefore concludes that this Court is without subject matter jurisdiction, and his convictions should be vacated.  This Court disagrees with Defendant's factual premise that his offense conduct was a purely intrastate event.  As just one of many examples detailed in the Presentence Report, Defendant used the Internet to send from New York to Montana "17 files containing pornography, at least 6 of which contained children engaged in sexually explicit conduct."  (PSR ¶ 16.)  Defendant distributed child pornography to an individual in Montana on at least four separate dates. (Doc. 21 at 6.)

In addition, Defendant's jurisdictional argument is without merit as a matter

of law.  The Ninth Circuit has held that even as to purely intrastate production and possession of child pornography, this is a "regulat[ed] activity that Congress could rationally determine would affect interstate commerce, taken in the aggregate." *United States v. Sullivan*, 735 F.3d 845, 854 (9th Cir. 2014).

Defendant's sixth ground for relief is therefore without merit.

Motion for Appointment of Counsel

The Court finds that Defendant's motion for appointment of counsel is without merit because Defendant possesses all the relevant facts and is able to present his claims coherently.  The Court does not find that the interests of justice require appointment of counsel, which in any event is not required by the Sixth Amendment of the United States Constitution because it does not extend to federal post-conviction remedies.  *See Knaubert v. Goldsmith*, 791 F.2d 722, 728 (9th Cir. 1986), *cert. denied*, 479 U.S. 867, 107 S.Ct. 228, 93 L.Ed.2d 155 (1986).

<u>Conclusion</u>

Thus, having considered the Defendant's Motion, the Court's file, and all the record of this case, the Court has determined that the Defendant is not entitled to relief as to his section 2255 Motion to Vacate Sentence. Accordingly,

IT IS HEREBY ORDERED that Defendant's Motions Pursuant to 28 U.S.C. § 2255 (Doc. 45 and 49) are both DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Appointment of Counsel (Doc. 52) is DENIED.

IT IS FURTHER ORDERED that Defendant's Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 51) is denied as moot.

A district court must issue a certificate of appealability when jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000). Finding that Defendant Burris's motion is untimely and fails to make a substantial showing of the denial of a constitutional right, whereby no jurist of reason would debate the correctness of denying

Defendant collateral relief,

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

The Clerk is directed forthwith to notify Defendant Burris of the entry of this order.

Done and Dated this 21st day of December, 2015.

CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE